UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Donald Alexander,<br><br>Plaintiff,<br><br>v.     Civil No. 07-1129 (DWF/AJB)<br><br>Boston Scientific Corporation, Guidant Subsidiary of Boston Scientific Corporation, and St. Anthony's Medical Center,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER** |

Donald Alexander, 31057 Oak Ridge Drive, Rocky Mount, MO 65072, *pro se*.

Timothy A. Pratt, Esq., Deborah A. Moeller, Esq., and Julie R. Somora, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Boston Scientific Corporation and Guidant Subsidiary of Boston Scientific Corporation.

Douglas Ponder, Esq., Karen C. Moske, Esq., and V. Scott Williams, Esq., Hazelwood & Weber, LLC, counsel for Defendant St. Anthony's Medical Center.

---

The above-entitled matter is before the Court pursuant to Plaintiff Donald Alexander's Motion for Remand to St. Louis County Circuit Court and Defendant St. Anthony's Medical Center's ("St. Anthony's") Motion to Dismiss. For the reasons stated below, the Court grants Alexander's Motion for Remand as to Defendant

St. Anthony's, but denies the motion as to all remaining Defendants. The Court denies St. Anthony's Motion to Dismiss as moot.

## BACKGROUND

On May 25, 2006, Alexander was implanted with a Model 1291 Guidant pacemaker at St. Anthony's facilities. Alexander alleges that some of St. Anthony's nurses and staff assisted in the implant. Alexander also alleges that St. Anthony's paid for the pacemaker and included the charges for the pacemaker in Alexander's patient billing.

The Model 1291 device that was implanted in Alexander was manufactured in December 2005. Prior to its manufacture, on September 22, 2005, Guidant issued a recall regarding its Model 1291 Guidant pacemakers, among others. The recall was based on two failure modes.

As to the first failure mode, Guidant recommended that physicians "consider the projected low and declining failure rate in addition to the unique needs of individual patients in their medical decisions regarding patient management" and recommended "normal monitoring, as per device labeling." (Aff. of V. Scott Williams in Supp. of Def. St. Anthony's Mot. to Dismiss and Mem. of Law in Opp'n to Pl.'s Mot. for Remand ("Williams Aff.") at Ex. C.) In addition, Guidant stated, "As always, advise patients to seek attention immediately if they experience syncope or lightheadedness." (*Id.*) As to the second failure mode, Guidant recommended the following:

> Guidant recommends verifying pacemaker operation in the packaging prior to the implant procedure. Devices exhibiting intermittent or permanent loss or output or telemetry should not be implanted.

2

> Physicians should consider both the very low occurrence rate and that no failures have been observed after successful confirmation of pacing at implant, in addition to the unique needs of individual patients, in their medical decisions regarding patient management.

(Williams Aff. at Ex. C.)

Approximately two months later, on December 12, 2005, Guidant issued an "Advisory Update" that addressed the September 22, 2005 recall letter. There, Guidant explained the following:

> In March of 2004, Guidant discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 1."
>
> Guidant has recently discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 2." While Guidant recommends normal monitoring for patients implanted with these devices, Guidant representatives will retrieve and replace remaining hospital inventory with product free from susceptibility to "Mode 2" peri-implant failure.
>
> INSIGNIA and NEXUS devices currently being distributed by Guidant are not subject to either failure mode and therefore are not included in either recall.

(Williams Aff. at Ex. D.) Although Alexander's Model 1291 device was manufactured in December 2005, it is unclear whether the device was manufactured and shipped prior to this December 12, 2005 Advisory Update.

Approximately one month after Alexander's implant surgery, on June 23, 2006, Guidant issued a separate recall of the Model 1291. Thereafter, on July 7, 2006, Alexander received notice from the St. Louis Metro Heart Group that the specific Guidant pacemaker that was implanted in him had been recalled in connection with defective product concerns.

3

On July 25, 2006, Alexander filed this case against Defendants Boston Scientific Corporation ("BSC"), Guidant Subsidiary of Boston Scientific Corporation ("Guidant"), and St. Anthony's in the Circuit Court of St. Louis County, Missouri. It is undisputed that Alexander and St. Anthony's are both Missouri residents. Guidant is a citizen of Indiana and BSC is a citizen of Delaware and Massachusetts.

Alexander alleges that BSC and Guidant are liable for manufacturing and design defects and for the failure to warn patients of the alleged health risks and/or defects associated with certain Guidant implantable cardiac medical devices. Alexander alleges that St. Anthony's committed medical negligence because it knew or had reason to know that Alexander's Guidant device was potentially defective and because it did not advise Alexander or put Alexander on notice of these facts prior to implantation.

More specifically, Alexander alleges that:

> [p]rior to the actual implant surgery, both Guidant Corporation's said and physically present employee/agent and St. Anthony's Medical Center nursing staff or a designated St. Anthony's Medical Center employee/agent had the duty to disclose to Plaintiff that the Guidant pacemaker to be implanted in Plaintiff's chest is potentially defective and that a recall had been issued for Guidant pacemakers, model 1291 in September 2005 and that there existed a known manufacturing/assembly defect such that some unspecified percentage of Guidant pacemakers, model 1291, are known to be dangerously defective.
>
> 4. Both Guidant Corporation's said employee/agent and St. Anthony's Medical Center's staff employees attending to Plaintiff on May 25, 2006 breached the duty to disclose to Plaintiff that some unspecified percentage of Guidant pacemakers, model 1291, are know[n] to be dangerously defective, that several persons have died in connection with Guidant pacemakers, and that hundreds of product liability law suits are pending against Guidant Corporation.

(Williams Aff., Ex. B at 3-4.)

On August 25, 2006, BSC and Guidant removed the case to the United States District Court for the Eastern District of Missouri, Eastern Division, asserting that complete diversity exists because Alexander improperly joined St. Anthony's to defeat diversity jurisdiction. BSC and Guidant then filed a motion to stay all proceedings pending transfer of Alexander's case to the District of Minnesota as part of MDL No. 1708. The United States District Court for the Eastern District of Missouri granted the motion to stay and on February 7, 2007, the case was formally transferred to the District of Minnesota as part of MDL No. 1708.

On February 20, 2007, Alexander filed a Motion to Remand to St. Louis County Circuit Court, claiming that St. Anthony's is a proper defendant in the case and therefore complete diversity is lacking. On March 9, 2007, St. Anthony's filed a Motion to Dismiss, claiming that Alexander has failed to state a claim against St. Anthony's.

## I.   Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[1]

---

[1]   Section 1441(a) provides in pertinent part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

5

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Alexander essentially argues that BCS and Guidant had no right to remove under 28 U.S.C. § 1441(a) because there is incomplete diversity of citizenship because St. Anthony's is a Missouri resident. Alexander therefore argues that because there is no original jurisdiction, under 28 U.S.C. § 1447(c) the case must be remanded.

Here, because St. Anthony's is a Missouri resident, the action on its face is not removable. Defendants assert, however, that removal was proper because Alexander fraudulently joined St. Anthony's to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success. *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993); *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809-10 (8th Cir. 2003) (stating that the Court must "determine whether there is a reasonable basis

for predicting that the state's law might impose liability against the defendant"); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant."); *Anderson*, 724 F.2d at 84 ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."). The burden is on the defendants to establish that a party has been fraudulently joined. *Schwenn*, 822 F. Supp. at 1455.

Guidant and BSC contend that the Court should find fraudulent joinder because Alexander failed to plead a cause of action against St. Anthony's. St. Anthony's similarly asserts that complete diversity exists because Alexander failed to state a claim against St. Anthony's. Specifically, Defendants assert that Alexander failed to plead any facts showing that St. Anthony's received the September 22, 2005 recall letter, and even if St. Anthony's did receive the letter, the letter did not instruct physicians to cease implantation of Model 1291 devices or ask for their return. In addition, Defendants assert that the December 12, 2005 Advisory Update states that the devices distributed after the recall letter were not subject to the recall, and therefore the device implanted in Alexander, which was manufactured in December 2005, was not subject to a recall on the date it was implanted.[2]

---

[2] The Court notes that the December 12, 2005 Advisory Update actually states that "Guidant *has recently discontinued* shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to 'Failure Mode 2,'" and that "INSIGNIA and NEXUS devices *currently being distributed by Guidant* are not subject to either failure mode and therefore are not included in either recall." (Williams Aff. at Ex. D (emphasis added).)
(Footnote Continued on Next Page)

St. Anthony also asserts that it does not owe a duty to patients to report that the manufacturer of certain devices used in its facilities is a party to litigation regarding products that are not being used with that particular patient. And, St. Anthony asserts that because Alexander has not plead any facts demonstrating that anyone at St. Anthony's assumed a duty to inform him of risks associated with his device, contending that Missouri law requires such assumption, Alexander has failed to state a claim against St. Anthony's.[3]

Alexander, on the other hand, asserts that he has a cause of action against St. Anthony's based on his allegations that St. Anthony's knew that model 1291 pacemakers were known to be dangerously defective by May 25, 2006, and knew that Guidant had recalled model 1291 pacemakers eleven months prior to his implantation yet continued to market the units. Alexander asserts that despite this knowledge, St. Anthony's—acting through its employees/agents—selected a model 1291 Guidant pacemaker to be implanted into Alexander. Alexander alleges that, prior to his implantation, St. Anthony's concealed all of this information from him.

---

(Footnote Continued From Previous Page)
This does not necessarily indicate that the devices distributed after the September 22, 2005 letter were not subject to the recall, as the Advisory Update does not give specific dates as to when those specific devices were discontinued and as to when distribution stopped.

[3]   BSC and Guidant also assert that to the extent Alexander's claim against St. Anthony's was a strict liability claim, the claim is foreclosed under Missouri law. Because Alexander concedes that his claim is not a strict liability claim, the Court does not address the issue here.

8

Alexander asserts that his allegations are supported by the fact that Guidant issued a recall regarding the model 1291 pacemakers on September 22, 2005, Guidant issued a separate recall regarding the model 1291 pacemakers within thirty days of his implantation, and as of the date of his implantation, hundreds of product liability lawsuits involving Guidant pacemakers were pending in state and federal courts. In addition, Alexander asserts that because "[St. Anthony's] is in the business of implanting pacemakers and defibrillators and routinely does business with manufacturers and distributors of implantable cardiac devices," St. Anthony's "would certainly know the quality history and dependability rating of manufacturers selected by [St. Anthony's] to supply pacemakers for implantation by [St. Anthony's]." (Pl.'s Resp. in Opp'n to Def. St. Anthony's Medical Center's Mot. to Dismiss and to Def.'s Opp'n to Pl.'s Mot. to Remand to St. Louis County Circuit Court at 2.)

The Court acknowledges that Alexander is proceeding *pro se*. *Pro se* pleadings are liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers). Although BSC and Guidant contend that St. Anthony's failure to warn claims are without factual basis because it was "factually impossible" for St. Anthony's to have disclosed to Alexander that his device was potentially defective, the Court finds that, at this juncture, fact issues preclude the Court from finding that there is no basis for liability.

"[C]ontested issues of fact should be resolved in favor of the plaintiff." *Schwenn*, 822 F. Supp. at 1455. Alexander alleges in his Complaint, among other things, that "the medical center does business with Guidant Corporation on a regular basis and routinely invites Guidant Corporation employees/agents into its operating rooms during the implanting of Guidant pacemakers for programming purposes." (Williams Aff., Ex. B at 4-5.) At a minimum, Alexander has raised an issue as to whether St. Anthony's knew or had reason to know that Alexander's device was recalled and/or potentially defective in light of the publicity Guidant had received prior to Alexander's implantation regarding potentially defective devices.

"Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn*, 822 F. Supp. at 1455. Here, Alexander's pleadings do allege facts, which if true, have a chance of success. At a minimum, in light of the liberal pleading requirements, the Court cannot conclude that no valid claims are brought against St. Anthony's as a matter of well-settled law. In addition, there is no evidence that St. Anthony's was singled out to avoid federal diversity jurisdiction rather than to obtain full relief. Accordingly, Alexander's joinder of St. Anthony's cannot be deemed fraudulent. Therefore, the Court concludes that because St. Anthony's was joined as a defendant, it lacks subject matter jurisdiction over this action as it currently stands.

**Sever and Remand**

To the extent the Court does find that St. Anthony's was not fraudulently joined, which the Court does find, BSC and Guidant alternatively request the Court to sever and remand Alexander's claims against St. Anthony's to state court and retain jurisdiction over Alexander's claims against BSC and Guidant. Specifically, BSC and Guidant assert that Alexander had fraudulently misjoined St. Anthony as a party, and therefore the claims against St. Anthony should be severed from the claims asserted against BSC and Guidant. BSC and Guidant contend that the claims arising out of St. Anthony's treatment do not arise out of the same transaction or occurrence as the claims against BSC and Guidant because the claims against St. Anthony's are based on medical negligence while the claims against BSC and Guidant are based on product liability. Alexander contends that his claims against St. Anthony's are not negated simply because his claims against BSC and Guidant are based on product liability. Alexander asserts that the Defendants' actions/inactions do arise out of the same transaction or occurrence.

The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[4] If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that St. Anthony's has been improperly joined in this case. The joinder of the malpractice claim against St. Anthony's with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either BSC/Guidant or St. Anthony's would not be a basis for liability as to the other. However, separate liability as to each could be separately found.

This finding is consistent with how joinder has been interpreted in Missouri. The Missouri Supreme Court, for example, has rejected the propriety of joining defendants involved in successive accidents. *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348 (Mo. 1992) (en banc). There, the plaintiffs alleged they were seriously injured as a result of the successive negligent acts or omissions of the defendants "in combination" and that

---

[4] The Missouri rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Mo. R. Civ. P. 52.05.

12

the two accidents "were not separate and distinct but inseparable and indistinguishable thereby creating common liability among all of the named defendants." *Id.* at 346, 348. The supreme court held that joinder was not permitted under Mo. R. Civ. P. 52.05(a) because the cause of action arising out of the two accidents did not arise out the same transaction or occurrence. Instead, "[e]ach defendant [was] responsible for the injuries caused in the accident in which he or she was involved." *Id.* at 348. In light of *Jinkerson*, the Court finds that it likely that the state court would find that Alexander did not have a reasonable basis for joining St. Anthony's under state procedural law and that Alexander should sue St. Anthony's under a separate state action.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)

13

(emphasis added). However, where a non-diverse party, such as St. Anthony's here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the misjoinder of St. Anthony's would destroy complete diversity, and because the basis for the causes of action against St. Anthony's do not arise from the same transaction and occurrences as those in the causes of action against the other Defendants, the Court will sever the action against St. Anthony's so as to preserve BSC and Guidant's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II.  Motion to Dismiss

Because the Court concludes that the action against St. Anthony's shall be severed and remanded from the lawsuit, the Court denies St. Anthony's Motion to Dismiss as moot.

**IT IS HEREBY ORDERED** that:

1.  Plaintiff Alexander's Motion for Remand to St. Louis County Circuit Court (MDL No. 05-1708 (DWF/AJB), Doc. No. 1258; Civil No. 07-1129 (DWF/AJB), Doc. No. 3) is **GRANTED** as to Defendant St. Anthony's Medical Center but **DENIED** as to all remaining Defendants. The Court Orders that all claims against Defendant St. Anthony's Medical Center are **SEVERED** and **REMANDED** to St. Louis County Circuit Court.

2. Defendant St. Anthony's Motion to Dismiss (MDL No. 05-1708 (DWF/AJB), Doc. No. 1308; Civil No. 07-1129 (DWF/AJB), Doc. No. 9) is **DENIED AS MOOT WITHOUT PREJUDICE**.

Dated: June 4, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court